**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

|  |  |  |
|---|---|---|
| **SEVEN MORNING STARS, INC.,** | : | |
| **Plaintiff,** | : | |
| | : | **Case No.** |
| **v.** | : | |
| **UNITED STATES OF AMERICA** | : | |
| **Defendant.** | : | |

## COMPLAINT

Plaintiff Seven Morning Stars, Inc. ("Seven Morning Stars"), by and through undersigned counsel, pursuant to 7 U.S.C. § 2023 and 7 C.F.R. § 279.7, hereby files this Complaint against Defendant United States of America and alleges:

1.     This action seeks judicial review of the Final Agency Decision ("FAD"), dated July 15, 2026, of the United States Department of Agriculture's ("USDA") Food and Nutrition Administration ("FNA"), affirming the permanent disqualification of Seven Morning Stars, the retail food store owned by Seven Morning Stars, Inc., from participation as an authorized retailer in the Supplemental Nutrition Assistance Program ("SNAP").

## PARTIES

2.     Plaintiff Seven Morning Stars, Inc. is a Michigan corporation.  Seven Morning Stars is a resident and citizen of the State of Michigan.

3.     Seven Morning Stars, Inc. is the owner of a formerly SNAP-authorized grocery store located at 5287 Trumbull Street, Detroit, Michigan 48208.

4.     Seven Morning Stars is a "retail food store," as such a term is defined in 7 C.F.R. § 271.2.

5.     Defendant United States of America is the federal government.

6.     USDA is an executive branch department of the federal government.

7.     FNA is an agency of the USDA.

8.     FNA administers and has promulgated regulations governing the SNAP pursuant to a delegation by Congress in Section 4 of the Food and Nutrition Act of 2008, 7 U.S.C. § 2013, and from the USDA Secretary.

9.     Formerly known as the food stamp program, SNAP provides supplemental nutrition benefits to more than 41 million Americans and more than 1.36 million residents of Michigan. SNAP's fundamental purpose is to provide eligible low-income households with increased food purchasing power. 7 U.S.C. § 2011.

10.    Pursuant to SNAP regulations set forth in 7 C.F.R. Part 278, FNA asserts that it has regulatory authority to authorize and disqualify retail food stores from participation in SNAP.

**JURISDICTION AND VENUE**

11.    This Court has jurisdiction over this action pursuant to 7 U.S.C. § 2023, 7 C.F.R. § 279.7, 28 U.S.C. §§ 1331 and 1346.

12.    Venue in this district is proper under 7 U.S.C. § 2023 and 28 U.S.C. §§ 1391(b) and (e) because Seven Morning Stars, the retail food store that is the subject of this action, is located in this judicial district.  Venue is also proper because the United States of America is deemed a resident of this district and has consented to suit in this district.

13.    Plaintiff Seven Morning Stars has exhausted any and all administrative remedies required prior to the institution of this action.

**FACTUAL ALLEGATIONS**

14.    Seven Morning Stars is a grocery store that serves an impoverished community in Detroit.

15.    At all times relevant hereto, Seven Morning Stars, Inc. carried hundreds of different SNAP-eligible food items.

16.    Seven Morning Stars was authorized to accept SNAP benefits since 2010. Seven Morning Stars's FNA-issued SNAP authorization number was 0572139.

17.    On September 8, 2025, FNA's Retailer Operations Division ("ROD") charged Seven Morning Stars with trafficking in violation of FNA's SNAP Regulations ("Charge Letter").

18.     The Charge Letter set forth two (2) categories of trafficking violations that FNA contended Seven Morning Stars allegedly engaged in, in violation of FNA's SNAP regulations. These categories are:

- Multiple transactions were made from accounts of individual SNAP households within a set time period; and
- EBT transactions that are large based on the observed store characteristics and recorded food stock.

19.     The Charge Letter was accompanied by two (2) attachments, each of which set forth incomplete and redacted information about those transactions which FNA contended were "suspicious SNAP Electronic Benefit Transfer (EBT) transaction activity that occurred at your Store." *Id.* at 1.  The Charge Letter further contended that "[t]he EBT transaction information, when considered in relation to information about your store, indicates that trafficking is likely occurring at your store." *Id.*

20.     Trafficking is defined, *inter alia*, as the exchange of food stamps for cash, alcohol, tobacco, or other ineligible food products. 7 C.F.R. § 271.2.

21.     The penalty for trafficking is permanent disqualification from SNAP. 7 C.F.R. § 278.6(e)(1).

22.     In the attachments to the Charge Letter, FNA redacted the majority of each EBT card number or household numbers for each beneficiary that redeemed EBT at Seven Morning Stars for each transaction listed on each attachment to the Charge Letter.

23. By redacting the EBT card numbers and by failing to provide (or make available from state agencies that issue EBT cards to SNAP beneficiaries) the entirety of those beneficiaries' EBT card numbers and other personally identifiable information, FNA prevented Seven Morning Stars (and prevents other retailers charged with trafficking and other program violations) from contacting those SNAP beneficiaries whose EBT cards were used at Seven Morning Stars

24. On or about October 15, 2025, Seven Morning Stars submitted its response to FNA's Charge Letter and requested that FNA assess a trafficking civil money penalty ("CMP").

25. Via letter, dated January 29, 2026, FNA issued its initial determination permanently disqualifying Seven Morning Stars from participation in SNAP as an authorized retailer ("Permanent Disqualification Determination").

26. In the Permanent Disqualification Determination, FNA concluded that the violations set forth in the Charge Letter occurred at the Store.

27. On or about January 29, 2026 Seven Morning Stars timely requested administrative review of the Permanent Disqualification Determination, pursuant to 7 C.F.R. § 279.1 et seq. and submitted its written response in support thereof to FNA's Administrative and Judicial Review Branch ("ARB").

28.     On March 20, 2026, Seven Morning Stars's submitted its response in support of its request for administrative review ("Admin Review Response").  The Admin Review Response conclusively rebutted FNA's trafficking determination.

29.     During administrative proceedings, FNA relied upon records, which were never produced to Plaintiff or its counsel, when deciding to permanently disqualify Seven Morning Stars from SNAP.

30.     On July 15, 2026, David Shively, an FNA Administrative Review Officer ("ARO Shively") sent a copy of the FAD via e-mail to counsel for Seven Morning Stars. A copy of the FAD is attached hereto as Exhibit A.

31.     The FAD, using verbiage nearly identical to that used in other administrative review determinations, held that the Store's EBT transaction record, store visit report, and analysis of customer shopping behaviors "provide substantial evidence that questionable transactions during the focus period have characteristics and display patterns that are not consistent with legitimate sales of eligible food to SNAP benefit customers at a store of this type, size, and makeup." *Id.* at 15.

32.     The FAD further held that, "Based on this empirical data, and in the absence of any reasonable explanations for such transaction patterns, a conclusion can be drawn through a preponderance of evidence that the most likely explanation for "unusual, irregular, and inexplicable" transactions and patterns cited in the letter of charges is trafficking." *Id.* at 9.

33. The FAD, using verbiage similar to that used in other administrative review determinations, further held that the "record has yielded no indication of error or discrepancy in the reported findings by the Retailer Operations Division that program benefits were accepted in exchange for cash or consideration other than eligible food. Therefore, based on a review of the evidence in this case, it is more likely true than not true that program violations did, in fact, occur as charged. Therefore, the decision to impose a permanent disqualification from participation in the SNAP against Seven Morning Stars Inc, is sustained." *Id.* at 15.

34. In the FAD, FNA rejected all of Seven Morning Stars's arguments, notwithstanding the evidence it submitted and the absence of a preponderance of contradictory evidence.

35. FNA's Permanent Disqualification Determination and FAD relied upon records and other information never provided to Seven Morning Stars or its counsel, including portions of its Case Analysis Document ("CAD").

36. Upon information and belief, FNA's CAD contains numerous incorrect factual determinations about Seven Morning Stars

37. Upon information and belief, FNA's CAD was based largely upon a single, short visit conducted by an FNA contractor on October 31, 2024 ("Store Visit"). The Store Visit lasted under an hour.

38. FNA relied upon undisclosed analyses of a small number other SNAP-authorized retail food stores in the vicinity and the shopping habits of a small number of SNAP beneficiaries that shopped at Seven Morning Stars and other SNAP-authorized stores.

39. FNA's Charge Letter was triggered based upon a cursory screening of EBT transactions through FNA's Anti-Fraud Locator Using EBT Retailer Transactions ("ALERT") system conducted by FNA's Case Screening Branch.

40. No USDA or FNA official or employee ever visited Seven Morning Stars in connection with the issuance of the Charge Letter.

41. No USDA, FNA, or other official or employee of the federal government visited Seven Morning Stars in connection with administrative review proceedings, including (but not limited to) the issuance of the FAD.

42. Neither Stephanie Knight, the FNA Program Specialist who issued the Charge Letter nor Kevin Hobbs, the FNA Section Chief who signed the Charge Letter and Permanent Disqualification Determination, conducted a store visit at Seven Morning Stars.

43. At no time did Program Specialist Knight or Section Chief Hobbs ever speak with any owner or employee of Seven Morning Stars.

44. At no time did Program Specialist Knight or Section Chief Hobbs ever speak with any SNAP beneficiaries who shopped at Seven Morning Stars.

45.     At no time did Program Specialist Knight or Section Chief Hobbs ever visit Seven Morning Stars or any other SNAP-authorized store in Detroit in the vicinity of Seven Morning Stars, including those used as comparison stores.

46.     At no time did Program Specialist Knight or Section Chief Hobbs ever speak with any owners, managers, or employees of any SNAP-authorized stores used as comparison stores.

47.     At no time did Program Specialist Knight or Section Chief Hobbs conduct an analysis of eligible food items carried by or prices charged by any SNAP-authorized stores used as comparison stores.

48.     At no time did ARO Shively ever conduct a store visit at Seven Morning Stars.

49.     At no time did ARO Shively ever speak with any owner or employee of Seven Morning Stars.

50.     At no time did ARO Shively ever speak with any SNAP beneficiaries who shopped at Seven Morning Stars.

51.     At no time did ARO Shively ever visit any SNAP-authorized stores used as comparison stores.

52.     At no time did ARO Shively ever speak with any owners, managers, or employees of any SNAP-authorized stores used as comparison stores.

53. Upon information and belief, at no time did ARO Shively conduct an analysis of eligible food items carried by or prices charged by any SNAP-authorized stores used as comparison stores.

54. Upon information and belief, prior to the issuance of the FAD, ARO Shively spoke with Program Specialist Knight and/or Section Chief Hobbs regarding their investigation and conclusions/determinations.

55. The Charge Letter and trafficking determination were not based on an undercover FNA investigation.

56. The FAD was primarily based upon FNA's review of EBT transactions at Seven Morning Stars.

57. The FAD was not based upon any declarations or affidavits from any USDA, FNA, or contractor which affirmed that any owner, member, officer, director, or employee of Seven Morning Stars provided cash, alcohol, drugs, or any other ineligible items in exchange for SNAP benefits.

58. FNA's determination in the FAD that Seven Morning Stars engaged in trafficking in violation of its SNAP regulations was premised upon arbitrary and capricious categories.

59. Neither the Food and Nutrition Act of 2008 nor FNA's SNAP regulations nor any other issuance by FNA defines or describes what constitutes "depletion of the bulk of a household's remaining benefits" or "within short time frames."

60. Neither the Food and Nutrition Act of 2008 nor FNA's SNAP regulations nor any other issuance by FNA defines or describes what constitutes "multiple transactions."

61. Neither the Food and Nutrition Act of 2008 nor FNA's SNAP regulations nor any other issuance by FNA defines or describes what constitutes "within a set time period."

62. Neither the Food and Nutrition Act of 2008 nor FNA's SNAP regulations nor any other issuance by FNA defines or describes what constitutes "suspicious transaction activity."

63. Neither the Food and Nutrition Act of 2008 nor FNA's SNAP regulations nor any other issuance by FNA defines or describes what constitutes "EBT transactions that are large."

64. Neither the Food and Nutrition Act of 2008 nor FNA's SNAP regulations nor any other issuance by FNA defines or describes what constitutes "observed store characteristics" or "recorded food stock."

65. FNA and its undercover investigator failed to obtain a comprehensive record of Seven Morning Stars's food stock.

66. Any evidence in FNA's possession regarding "recorded food stock" was based exclusively on photographs taken by FNA's investigator during a store visit conducted on a single day during the Review Period.

67. The photographs taken by FNA's investigator during the store visit portrayed an incomplete snapshot of the food stock purchased by Seven Morning Stars during the Review Period.

68. In the Store Visit Report, the investigator failed to note numerous expensive items sold at the Store and incorrectly recorded levels of inventory of eligible food items.

69. Unlike cases involving undercover USDA or FNA investigators, none of the "evidence" compiled by FNA prior to or during administrative proceedings against Seven Morning Stars is direct evidence of trafficking. Instead, all the evidence relied upon by FNA was, at most, circumstantial.

70. The FAD is FNA's final administrative determination which asserts that its permanent disqualification of Seven Morning Stars from participation as an authorized SNAP retailer was properly imposed.

71. The FAD did not determine that each of the transactions set forth in the Charge Letter were instances of trafficking in violation of FNA's SNAP regulations.

72. No evidence exists that supports that each of the transactions set forth in the Charge Letter was an independent instance of trafficking in violation of FNA's SNAP regulations.

73. FNA does not know what was exchanged for SNAP benefits during any of the transactions set forth in Attachment 1 to the Charge Letter.

74. FNA does not know what was exchanged for SNAP benefits during any of the transactions set forth in Attachment 2 to the Charge Letter.

76. Exclusively eligible food items were exchanged for SNAP benefits during each of the transactions set forth in Attachment 1 to the Charge Letter.

77. Exclusively eligible food items were exchanged for SNAP benefits during each of the transactions set forth in Attachment 2 to the Charge Letter.

79. The FAD concluded that patterns indicative of trafficking took place at Seven Morning Stars.

80. FNA, by failing to produce records and other information which would permit Seven Morning Stars to contact its customers in order to defend against the trafficking charges acted in an arbitrary and capricious manner designed to deprive Plaintiff Seven Morning Stars of the ability to properly respond to the Charge Letter and during Administrative Review proceedings.

81. All information reviewed and relied upon by FNA during administrative proceedings will be produced as the Administrative Record and/or during discovery during this judicial review proceeding.

82. FNA's ALERT system was the primary basis for the issuance of the Charge Letter.

83. Without ALERT system flags, the Charge Letter would not have been issued.

84. FNA's ALERT system was the primary basis for its conclusion that Seven Morning Stars engaged in trafficking in violation of FNA's SNAP regulations.

85. FNA's ALERT system was the primary basis for its decision in the FAD to affirm the permanent disqualification of Seven Morning Stars from participation in the SNAP as an authorized vendor.

86. FNA placed improper reliance upon its ALERT system in determining that Seven Morning Stars engaged in trafficking in violation of the agency's SNAP regulations.

87. FNA did not have express authority to disqualify SNAP retailers based on the ALERT system.

88. FNA did not have implied authority to disqualify SNAP retailers based on the ALERT system.

89. No statutory provision in the Food and Nutrition Act of 2008 references the ALERT system.

90. Congress did not delegate authority to the USDA Secretary to disqualify SNAP retailers (including Seven Morning Stars) based on the ALERT system.

91. USDA Secretary Rollins did not delegate authority to FNA to disqualify SNAP retailers (including Seven Morning Stars) based on the ALERT system.

92. FNA's ALERT system does not take into account retailer-specific circumstances, including the volume of a retail food store's purchases.

93. FNA, in the FAD, ignored well-founded explanations that Seven Morning Stars did not engage in trafficking.

94. A higher-than-expected volume of a retail food store's purchases may account for EBT redemption at levels higher than anticipated by FNA.

95. FNA's ALERT system does not consider the agency's regulations and guidance which require, inter alia, retailers to redeem any or all of a SNAP beneficiaries' benefits without regard to the type of eligible food items purchased.

96. FNA's ALERT system does not consider that SNAP beneficiaries are permitted to redeem EBT for any eligible food items, including the entirety of their monthly allotment or to make large purchases.

97. FNA's ALERT system does not consider that SNAP-authorized retailers are not permitted to refuse to redeem EBT for eligible food items for any reason, including permitting persons who are not named or pictured on an EBT card to redeem SNAP benefits.

98. FNA's ALERT system lacks a proper evidentiary foundation.

99. All evidence based on FNA's ALERT system should be excluded from being introduced as evidence in this case based on a lack of foundation and reliability.

100. FNA does not have adequate evidence to support that the patterns of SNAP transactions that the agency contends are suspicious and evidence of trafficking in SNAP benefits.

101.   SNAP-authorized retailers are not permitted to refuse to process SNAP transactions from the same or different households even if SNAP beneficiaries seek to purchase eligible food items multiple times each day.

102.   SNAP-authorized retailers are not permitted to ask EBT cardholders for identification.

103.   FNA incorrectly concluded that credit transactions at the Store were trafficking transactions.

104.   FNA had no basis to conclude that the Store did not extend credit to SNAP beneficiaries.

105.   FNA failed to properly consider the Store's arguments that it engaged in credit transactions.

106.   Seven Morning Stars was not afforded the opportunity to evaluate and respond to all of the evidence in FNA's possession when it issued the Charge Letter.

107.   Seven Morning Stars was not afforded the opportunity to evaluate and respond to all of the evidence used by FNA when it made its initial determination.

108.   Seven Morning Stars was not afforded the opportunity to evaluate and respond to all of the evidence used by FNA during ARB proceedings.

109.   Seven Morning Stars was not afforded the opportunity to evaluate and respond to all of the evidence reviewed and/or relied upon by FNA in making its FAD.

110.   Requiring retailers to await judicial review proceedings before they are permitted to review all of the evidence in FNA's possession (which information was relied upon by an Administrative Review Officer and other FNA officials during administrative proceedings), is arbitrary and capricious.

111.   FNA's SNAP retailer administrative process is Kafkaesque and more like a Star Chamber than an equitable federal administrative process.

112.   FNA is the sole agency within USDA that does not hold evidentiary hearings during administrative proceedings that concern the revocation of a license or permit before an administrative law judge who is an attorney.

113.   FNA is the sole agency within USDA that does not permit discovery during administrative proceedings that concern the revocation of a license or permit before an administrative law judge who is an attorney.

114.   Federal administrative proceedings that concern the revocation of a license or permit issued by a federal agency must satisfy due process and other constitutional requirements.

115.   FNA is not a law enforcement agency.

116.   FNA investigators are not authorized by federal law or regulations to carry firearms or other weapons when conducting store visits or investigations of SNAP-authorized retailers.

117.  FNA contractors are not authorized by federal law or regulations to carry firearms or other weapons when conducting store visits or investigations of SNAP-authorized retailers.

118.  No statute or regulation prohibits FNA from providing Seven Morning Stars or its counsel with the entire administrative record during administrative review proceedings.

119.  No statute or regulation prohibits FNA from convening evidentiary hearings during SNAP retailer administrative review proceedings.

120.  By failing to provide Seven Morning Stars with all information available to it, FNA did not provide Seven Morning Stars with a meaningful opportunity to respond to the allegations in the Charge Letter in a manner consistent with the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.

121.  By failing to provide Seven Morning Stars with all information available to it, FNA did not provide Seven Morning Stars with a meaningful opportunity to participate during administrative review proceedings in a manner consistent with the Due Process Clause of the Fourth Amendment of the U.S. Constitution.

122.  FNA's actions in disqualifying Seven Morning Stars from SNAP has a disparate impact on SNAP retailers owned by persons who are descendants of immigrants.

## COUNT I - DE NOVO REVIEW OF FNA's FINAL AGENCY ACTION PURSUANT TO 7 U.S.C. § 2023 AND 7 C.F.R § 279

123. Plaintiff repeats and re-alleges paragraphs 1 through 122 as if fully set forth herein.

124. At no time did Seven Morning Stars engage in trafficking in SNAP benefits.

125. At no time did any employee of Seven Morning Stars engage in trafficking in SNAP benefits.

126. At no time did any manager of Seven Morning Stars engage in trafficking in SNAP benefits.

127. At no time did any other person or entity affiliated with Seven Morning Stars engage in trafficking in SNAP benefits.

128. The transactions identified in the attachments to the Charge Letter are not patterns of SNAP transactions indicative of trafficking.

129. The transactions identified in the attachments to the Charge Letter are not "suspicious" transactions.

130. The transactions identified in the attachments to the Charge Letter did not have characteristics that are consistent with trafficking violations in SNAP benefits.

131. The purported existence of more than one pattern of allegedly irregular transactions does not make a case of trafficking more convincing.

132.   FNA's permanent disqualification of Seven Morning Stars from participation in SNAP was invalid, unreasonable, arbitrary and capricious, unsupported by the evidence, and should be reversed.

133.   A preponderance of the evidence before ARB during administrative review proceedings established that Seven Morning Stars never engaged in trafficking in SNAP benefits.

134.   In the FAD, FNA incorrectly determined that a preponderance of the evidence demonstrated that Seven Morning Stars engaged in trafficking, in violation of the Food and Nutrition Act of 2008 and FNA's SNAP regulations.

135.   The permanent disqualification of Seven Morning Stars from participating in SNAP should be reversed because FNA failed to consider all evidence related to the store and the trafficking charges.

136.   The permanent disqualification of Seven Morning Stars from participating in SNAP should be reversed because FNA failed to interview a single SNAP beneficiary whose EBT card was used at the store.

137.   The FAD should be reversed because permanently disqualifying Seven Morning Stars from participating in SNAP is unreasonable and excessive considering the circumstances.

138. FNA's acts and omissions during administrative proceedings were unreasonable, inequitable, arbitrary and capricious, and in excess of the authority granted to it by Congress.

139. FNA's acts and omissions during administrative proceedings violated and were not consistent with the requirements of the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.

140. Permanent disqualification of Seven Morning Stars from participating in SNAP is inconsistent with Congressional intent in enacting the Food and Nutrition Act of 2008.

141. Permanent disqualification of Seven Morning Stars from participating in SNAP represents agency action beyond the scope of authority granted by Congress to FNA when it delegated power to FNA to promulgate and enforce reasonable regulations in the Food and Nutrition Act of 2008.

142. FNA's permanent disqualification of Seven Morning Stars from participating in SNAP based upon circumstantial evidence represents agency action beyond the scope of authority granted by Congress to FNA when it delegated the power to promulgate and enforce reasonable regulations pursuant to the Food and Nutrition Act of 2008.

143.  FNA's permanent disqualification of Seven Morning Stars from participating in SNAP based on the Charge Letter is inconsistent with a disqualification for a "reasonable period of time."

144.  FNA's failure to consider or impose a penalty other than permanent disqualification of Seven Morning Stars from participating in SNAP was invalid and erroneous.

145.  The FAD was based on an arbitrary and capricious interpretation of the Food and Nutrition Act of 2008 and FNA's SNAP regulations.

146.  In the FAD, FNA acted arbitrarily and capriciously in concluding that Seven Morning Stars engaged in trafficking in violation of the Food and Nutrition Act of 2008 and FNA's SNAP regulations.

147.  In the FAD, FNA acted arbitrarily and capriciously in denying Seven Morning Stars's CMP request.

148.  FNA's permanent disqualification of Seven Morning Stars is premised upon an arbitrary and capricious, erroneous, and unsupportable interpretation of 7 C.F.R. § 278.6.

149.  In issuing the FAD, FNA acted arbitrarily and capriciously by failing to consider all information submitted by or related to Seven Morning Stars in its possession and that of state SNAP agencies.

150.   Pursuant to 7 U.S.C. § 2023 and 7 C.F.R. Part 279, this Court should conduct a *de novo* review of FNA's FAD which affirmed the permanent disqualification of Seven Morning Stars from participating in SNAP.

**WHEREFORE**, Plaintiff Seven Morning Stars, Inc. respectfully requests that this Court, after conducting a *de novo* review of the FAD, enter judgment in its favor and against the United States, and issue an Order granting the following relief:

(a)   Reversing the FAD;

(b)   Rescinding the Charge Letter and Permanent Disqualification Determination;

(c)   Preliminarily and permanently enjoining FNA from disqualifying Seven Morning Stars from participation in SNAP based upon the Permanent Disqualification Determination, the FAD, or the alleged violations in the Charge Letter;

(d)   Declare that FNA's ALERT system and the patterns referenced in the Charge Letter are not based upon a proper or admissible foundation;

(e)   Directing FNA to immediately restore Seven Morning Stars's SNAP authorization and without requiring it to submit additional information or a new application;

(f)      Awarding Plaintiff Seven Morning Stars, Inc. reasonable attorney's fees and costs pursuant to the Equal Access to Justice Ac and other applicable laws, regulations, rules, and in its reasonable discretion; and

(g)      Such other and further relief as the Court may deem just and proper.

Respectfully submitted this 13th day of August 2026

/s/ Stewart D. Fried
Stewart D. Fried, Esq.
Olsson Frank Weeda Terman Matz PC
2000 Pennsylvania Avenue, N.W., Suite 4003
Washington, DC 20006
Telephone: 202.518.6326
Facsimile: 202.234.3550
sfried@ofwlaw.com
*Attorneys for Plaintiff Seven Morning Stars, Inc.*